IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MANUEL A. RODRIGUEZ,

      Plaintiff,

      vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,[1]

      Defendant.

No. CIV S-06-1303 DAD

<u>ORDER</u>

      This social security action was submitted to the court, without oral argument, for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion for summary judgment is granted in part, the Commissioner's cross-motion for summary judgment is denied, and this matter is remanded for further administrative proceedings consistent with this order.

**PROCEDURAL BACKGROUND**

      Plaintiff Manuel Rodriguez applied for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act (the "Act"),

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Mr. Astrue is substituted as defendant in this suit pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ. P. 25(d)(1).

1

respectively. (Transcript (Tr.) at 297-300.) The Commissioner denied plaintiff's application initially and on reconsideration. (Tr. at 31-45, 49-53.) Pursuant to plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on March 22, 2005, at which time plaintiff was represented by counsel. (Tr. at 312-48.) In a decision issued on October 28, 2005, the ALJ determined that plaintiff was not disabled. (Tr. at 19-27.) The ALJ made the following findings:

1. The claimant met the disability insured status requirements of the Act on July 27, 2002, the date the claimant stated he became unable to work, and continues to meet them through the date of the decision.

2. The claimant has not engaged in substantial gainful activity since his alleged onset date of disability.

3. The medical evidence establishes that the claimant has diabetes mellitus, disc bulging, and left shoulder pain, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations [*sic*] No. 4. His generalized anxiety is a slight impairment which has minimal, if any, [*sic*] on his ability to work.

4. The claimant's subjective complaints and alleged functional limitations are not as severe as asserted and are only partially credible.

5. The claimant has the retained residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently, and stand, walk and sit 6 hour [*sic*] in an 8-hour workday with occasional climbing, balancing, kneeling, crouching, crawling, reaching overhead and forceful grasping and gripping with his left non-dominant upper extremity, and should avoid concentrated exposure [*sic*] working at heights (20 CFR 404.1545 and 416.945).

6. The claimant is unable to perform his past relevant work as a tow truck driver and tire repairer.

7. The claimant's residual functional capacity for the full range of light work is not significantly reduced by his nonexertional limitations.

/////

2

| | | |
|---|---|---|
| 8. | | The claimant is 49 years old, which is defined as a younger individual (20 CFR 404.1563 and 416.963). |
| 9. | | The claimant has a limited education (20 CFR 404.1564 and 416.964). |
| 10. | | The claimant does not have any acquired work skills which are transferable to the skilled or semi-skilled work functions of other work (20 CFR 404.1568 and 416.968). |
| 11. | | Based on an exertional capacity for light work, and the claimant's age, education, and work experience, section 404.1569 of Regulations [*sic*] No. 4 and 416.696 of Regulations [*sic*] No. 16, and Rule 202.20, Table No. 2, Appendix 2, Subpart P, Regulations [*sic*] No. 4 would direct a conclusion of "not disabled." |
| 12. | | Although the claimant's additional nonexertional limitations do not allow [*sic*] to perform the full range of light [*sic*], using the above-cited rule as a framework for decision-making, there are a significant number of jobs in the national economy which [*sic*] could perform. Examples of such jobs are: cashier and assembly. |
| 13. | | The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.1520(f) and 416.920(f)). |

(Tr. at 26-27.)

The Appeals Council declined review of the ALJ's decision on April 28, 2006 (tr. at 12-14), but set aside that action to consider additional information. Upon consideration of that information, the Appeals Council again denied plaintiff's request for review. (Tr. at 5.) Plaintiff then sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on June 13, 2006.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper

legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). This five-step process can be summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt.

/////

4

|   |   |
|---|---|
| 1 | 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four. |
| 2 |   |
| 3 | Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five. |
| 4 | Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled. |
| 5 |   |

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff presents three primary arguments in his motion for summary judgment. First, plaintiff argues that the ALJ erred in his treatment of the various physicians' opinions in the record.  In particular, plaintiff argues that the ALJ erred by rejecting the opinion of plaintiff's treating physician and by failing to include the specific limitations articulated in the opinions of examining consultant, Dr. Liana Turkot, M.D. and non-examining state agency physician, Dr. Corazon C. David, M.D., in his residual functional capacity determination.  Second, plaintiff argues that the ALJ erred at step two of the sequential evaluation in finding plaintiff's mental impairments to be "not severe."  Finally, plaintiff argues that the ALJ erred by finding that plaintiff had no visual limitations affecting his ability to work.  Below the court will address each of plaintiff's arguments.

**I. Treatment of Medical Opinions**

Plaintiff argues that the ALJ erred by discrediting the opinion of plaintiff's treating physician, Dr. Esteban Lovato, M.D., and by failing to adopt the positional limitations assessed by consultative examining physician Dr. Turkot, and non-examining state agency physician, Dr. David, in making his residual functional capacity assessment.

/////

5

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester, 81 F.3d at 830. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Id. This is so because a treating doctor has a greater opportunity to know and observe the patient as an individual. Id.; Smolen, 80 F.3d at 1285. "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." Id. (citing Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)). "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)). Likewise, it is well-established that the medical opinion of a treating physician is entitled to special weight. See Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989); Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988)

In evaluating whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. As noted, an uncontradicted opinion of a treating or examining medical professional can be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The ALJ is required to weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152 (9th Cir.

/////

/////

2001)², but need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional alone, without other evidence, is an insufficient basis upon which to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831. Below the court will apply these standards to the record in this case.

With respect to the opinion of treating physician, Dr. Lovato, the ALJ accorded that opinion less weight because he found that it was "internally inconsistent" with the doctor's own treatment records and radiographic findings, and because it appeared to "accommodate" plaintiff's continued receipt of welfare benefits. (Tr. at 23.) Dr. Lovato's opinions regarding plaintiff's functional limitations are sparse and unexplained. As noted by the ALJ, both Dr. Lovato's opinions from November 20, 2003, and August 21, 2003, appear to have been rendered on forms from California's Health and Human Services Agency in support of plaintiff's continued receipt of welfare benefits. (Tr. at 23, 101-03, 271.) On the form completed on November 20, 2003, Dr. Lovato opined, without explanation or reference to medical records, that plaintiff could stand or walk for only two to four hours, and sit for a maximum of two hours in an eight-hour workday. (Tr. at 272.) Dr. Lovato also opined that due to "severe left arm pain," plaintiff could not use his hands and fingers for repetitive motions. He further opined that plaintiff was precluded from using his feet for repetitive movements because such movements would exacerbate plaintiff's left shoulder pain, as would cold weather. Dr. Lovato also indicated that plaintiff could never lift ten pounds due to severe left shoulder pain. (Tr. at 273.) Finally, he opined that plaintiff could never climb, balance, stoop, kneel, crouch, crawl or reach. Dr. Lovato

/////

---

² The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

offered no explanation or citations to clinical findings to support this restrictive view of plaintiff's functional capacity. (Tr. at 273.)

Dr. Lovato's August 21, 2003, assessment of plaintiff's functional capacity is similarly brief and unsupported. (Tr. at 101-02.) There, he opined that plaintiff could sit for two to four hours in an eight-hour workday, could not perform repetitive hand and finger motions due to "severe left shoulder pain," but had no such restrictions with regard to his feet. (Tr. at 101.) Dr. Lovato also opined that plaintiff could never climb, stoop, kneel, crouch, crawl or reach due to severe shoulder pain, but that he could occasionally balance. (Tr. at 102.)

The discrepancies between this opinion and the one rendered on November 20, 2003, (i.e., ability to sit for up to four hours versus two hours, no restrictions versus complete preclusion from repetitive foot motions, and ability to balance occasionally rather than never) is unexplained. More importantly, the August 21, 2003, opinion, like the November 20, 2003, opinion is conclusory and unsupported by clinical findings or other explanations. In fact, it is undermined by medical records showing several normal results from x-rays of plaintiff's shoulder.[3]

Indeed, although Dr. Lovato's notes reveal plaintiff's frequent complaints of shoulder pain, the radiographic evidence reflects only normal radiographic results. (Tr. at 148, 289.) The ALJ's citation to this inconsistency, in addition to his finding that Dr. Lovato's opinions were those of an advocate as well as conclusory and unsupported, constitute sufficient reasons for according those opinions little weight.

/////

---

[3] For example, the ALJ noted that an October 2003 x-ray of plaintiff's left shoulder was within normal limits (tr. at 23, 148), and that an x-ray from November 2004 showed that the articular and bony structures in plaintiff's shoulder were normal and revealed no evidence of calcific tendinitis. (Tr. at 23, 289.) Further, the ALJ noted that an x-ray of the cervical spine in December 2004 was normal (tr. at 23, 287), and that a later CT scan in February 2005 showed only minimal bulging of discs at C5-6 and C6-7, without significant central or neural foraminal stenosis. (Tr. at 23, 285.) Finally, the ALJ noted that plaintiff's treatment for left should plain consisted of one injection and pain medication. (Tr. at 23.)

Plaintiff also alleges that the ALJ erred by according "great weight" to the opinions of examining consultant Dr. Turkot and non-examining state agency physician, Dr. David, but at the same time failing to adopt their opinions regarding plaintiff's purported need for periodic positional changes. In this regard, on October 28, 2003, non-examining state agency physician, Dr. David opined that plaintiff could sit, stand or walk for about six hours in an eight-hour workday, but opined that he should have a two to five minute break every hour to change positions. (Tr. at 122.) This recommendation regarding positional changes appears in the margins of the agency form next to Dr. David's indication that plaintiff could stand or walk (with normal breaks) for six hours per workday. The need for positional changes is not reflected in Dr. David's opinion that plaintiff could sit for sustained periods during the workday. (Tr. at 122.) Similarly, Dr. Turkot opined that plaintiff could stand and walk for up to six hours in an eight-hour workday, had no restrictions in terms of the number of hours he could sit, but recommended "periodic positional changes . . . secondary to lower back pain." (Tr. at 115.)

These opinions of Drs. Turkot and David are largely consistent with the opinion of consultative examining physician, Dr. Nicholas Aboughannam, M.D., whose opinion the ALJ also accorded "great weight." (Tr. at 24). Dr. Aboughannam, like Dr. Turkot, opined that plaintiff could stand and walk for six hours in an eight-hour workday and could sit without restriction. (Tr. at 210.) However, the opinions of Drs. Turkot and David are implicitly contradicted by Dr. Aboughannam's opinion, which did not include a limitation of periodic positional changes during the workday. (Tr. at 210.) Given this contradiction, the ALJ was required to provide specific, legitimate reasons for adopting Dr. Aboughannam's assessment over those of Drs. David and Turkot. However, the ALJ did not even address the opinions of Drs. David and Turkot regarding plaintiff's need for periodic positional changes, let alone give reasons for discounting them. Accordingly, the court finds that remand is appropriate for proper consideration of the opinions of Drs. David and Turkot regarding plaintiff's limitations. If those

/////

opinions are credited, the ALJ must determine their effect on plaintiff's ability to perform work activities.

## II. Severity of Alleged Mental Impairment

Next, plaintiff alleges that the ALJ erred at step two of the sequential evaluation based on his finding that plaintiff did not have a severe mental impairment and by his failure to apply the psychiatric review technique set forth in 20 C.F.R. § 1520a.

The Commissioner has promulgated rules requiring ALJs to employ a special technique in evaluating claims of mental impairment. See 20 C.F.R. §§ 404.1520a, 416.920a. Where there is a colorable claim of mental impairment, 20 C.F.R. § 404.1520a requires the application of the "special technique" for assessing the severity of such impairments.[4] See Gutierrez v. Apfel, 199 F.3d 1048, 1051 (9th Cir. 2000) (applying old rule requiring a completed psychiatric review technique form be appended to the ALJ's decision); Mersman v. Halter, 161 F. Supp. 2d 1078, 1086-87 (N.D. Cal. 2001) (noting that the new rules eliminate the appendage requirement, but require the ALJ's written decision to make specific findings as to the degree of limitations in each functional area described in § 404.1520a(c)).

Under the new rules, the ALJ must rate the degree of functional limitation in three areas (daily activities; social functioning; and concentration, persistence, or pace) as being either none, mild, moderate, marked, or extreme, and rate the degree of decompensation as either none, one or two, three, four or more. Id. (citing 20 C.F.R. 404.1250a(c)(3) and (4)). Only after the degree of functional limitation in these four areas is rated, will the Commissioner determine the

---

[4] The rules now provide that "under the special technique, we must first evaluate your pertinent symptoms, signs and laboratory findings to determine whether you have a medically determinable impairment. . . . If we determine you have a medically determinable impairment, we must specify the symptoms, signs and laboratory findings that substantiate the presence of the impairments and document our findings in accordance with paragraph (e) of this section." The regulations then require the Commissioner to rate the degree of a claimant's functional limitations resulting from the impairment in four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and, (4) episodes of decompensation. 20 C.F.R. § 1520a(b)-(c).

severity of a claimant's impairment. 20 C.F.R. § 1520a(d). Where the decision "does not contain such rating on plaintiff's functional limitations," remand is required for compliance with the regulations. Mersman, 161 F. Supp. 2d at 1086-87; 20 C.F.R. § 1520a(e)(2) (requiring that the ALJ's written decision "incorporate the pertinent findings and conclusions based on the technique" and include a "specific finding as to the degree of limitation in each of the [four] functional areas"). The decision must also "show the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment." 20 C.F.R. § 1520a(e)(2)

Here, there is no indication that the ALJ considered the opinions of the two state agency psychiatrists who evaluated plaintiff. One of those state agency doctors found that "medically determinable impairments" (i.e., depressive disorder and generalized anxiety) were present (tr. at 191, 193), and assessed mild limitations in plaintiff's activities of daily living, as well as in his ability to maintain social functioning, and concentration, persistence and pace. (Tr. at 198.) Similarly, on July 19, 2004, another state agency physician opined that plaintiff had moderate limitations in his ability to understand, remember, and carry out detailed instructions, as well as in his ability to interact appropriately with the public. (Tr. at 202-03.)

Rather than considering these opinions, it appears that the ALJ found that plaintiff's mental impairment was not severe based solely on the report of examining consultative psychiatrist, Dr. Hisham Soliman, M.D. The ALJ noted that Dr. Soliman diagnosed plaintiff with a depressive order and rated his Global Assessment Functioning ("GAF") at 70.[5] The ALJ characterized this evaluation as "essentially normal," and concluded that plaintiff's "generalized anxiety is a slight impairment which has only minimal, if any, effect on his ability to work ." (Tr. at 22, 24.)

---

[5] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, Text Revision 34 (4th ed. 2000) ("DSM IV"). A 61-70 rating indicates some mild symptoms or some difficulty in social occupational, or school functioning, but generally indicates that a person is functioning pretty well. Id.

1  This analysis fails to employ the required "special technique" set forth in 20
2 C.F.R. § 404.1520a.  As a result, this court is precluded from proper review of the ALJ's
3 decision regarding the severity of plaintiff's mental impairment.  Accordingly, the matter must be
4 remanded for reevaluation of that impairment based on the special technique set forth in 20
5 C.F.R. § 404.1520a.  In remanding the matter, the court expresses no opinion with respect to the
6 ultimate determination of the severity of plaintiff's mental impairment.

**III. Assessment of Plaintiff's Visual Impairment**

Plaintiff next argues that the ALJ improperly determined that plaintiff's visual problems are correctable with glasses, and requests remand for a reevaluation of his visual limitations and their effect on his ability to work.  More specifically, plaintiff argues that the ALJ should have considered the effect of plaintiff's hypoglycemic episodes on his visual capacity and the fact that plaintiff's vision is not 100 percent correctable with lenses.

The ALJ, however, did not find that plaintiff's vision was 100 percent correctable with lenses.  Rather, he considered the comments of various doctors who examined plaintiff, including Dr. Turkot, who found that tests showed plaintiff had 20/30 vision in his left eye and 20/50 in his right eye, <u>with lenses</u>.  (Tr. at 23) (emphasis added.)  Dr. Turkot opined that plaintiff had "visual limitations secondary to a visual loss requiring wearing glasses."  (Tr. at 115.)  Dr. Aboughannam recorded similar results from a vision test, noting that plaintiff's vision was somewhat impaired, even with lenses, but ultimately concluding that plaintiff had "no relevant visual . . . limitations."  (Tr. at 207, 210.)  The ALJ accorded weight to both of these medical opinions.

Although plaintiff alleges that the ALJ should have considered the effect of plaintiff's hypoglycemic episodes on his visual capacity, there is little evidence in the record to support this alleged limitation.  None of the doctors who examined or treated plaintiff, nor any of the state agency physicians, assessed visual limitations affecting plaintiff's ability to work.  (Tr. at 101-03, 115, 124, 184-87 210, 271-73).  Plaintiff does not challenge any of these medical

1  opinions. Furthermore, the record was held open in order for plaintiff to submit updated medical
2  records regarding his vision (tr. at 22), but none of the records subsequently submitted concern
3  plaintiff's alleged visual impairments or their purported effect on his ability to perform work
4  activities. (Tr. at 276-96.) Accordingly, the ALJ's implicit finding that plaintiff's alleged visual
5  impairments did not impact his ability to work is supported by substantial evidence in the record
6  and will not be disturbed.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment and/or remand is granted in part;

2. Defendant's cross-motion for summary judgment is denied; and

3. The decision of the Commissioner of Social Security is reversed and this case is remanded for rehearing consistent with the analysis set forth herein. See 42 U.S.C. § 405(g), Sentence Four.

DATED: September 6, 2007.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:mb
rodriguez1303.ord